IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JOHN DOE, on Behalf of Himself and Others Similarly Situated, | Case No. 3:23-cv-346 |
| Plaintiff, | **CLASS ACTION COMPLAINT**<br>[Jury Trial Demanded] |
| v. | |
| LEXISNEXIS RISK SOLUTIONS, INC., SEISINT DECISION SERVICES, INC., and REED ELSEVIER TECHNOLOGY SERVICES, INC., | |
| Defendants. | |

**NOW COMES** Plaintiff John Doe ("Plaintiff"), through counsel, for his Complaint against LexisNexis Risk Solutions, Inc., ("LexisNexis" or "LNRS"), Seisint Decision Services, Inc., ("Seisint") and Reed Elsevier Technology Services, Inc., (Reed) (collectively referred to as "Defendants" or "LexisNexis") alleging as follows:

## I.     PRELIMINARY STATEMENT

1.     This is a consumer class action based upon Defendants' widespread violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Defendants (collectively "LexisNexis"), operating as a single business or joint enterprise, regularly sell a product called an "Accurint" report or search (herein "report"), which provides the buyer with substantial and detailed personal information about individual consumers' character, general reputation, personal characteristics, mode of living, and/or credit worthiness. These reports are used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing consumers' eligibility for, among other permissible purposes under the FCRA, licenses or other benefits granted by governmental instrumentalities (e.g., determinations by

1

the North Carolina Board of General Contractors regarding consumers' eligibility for general contractors' licenses under N.C.G.S. § 87-10). LexisNexis furnishes these reports without the certification of a lawful purpose required by the FCRA. In fact, these reports are obtained and used by parties who expressly disclaimed having any lawful purpose to use these reports. LexisNexis deliberately attempts to evade its obligations under the FCRA and, as a result, LexisNexis willfully deprives consumers of the rights afforded to them by the FCRA, including (but not limited to) consumer's rights to be protected from the unlawful and impermissible sale of their reports to third parties, their rights to obtain a full copy of the reports that LexisNexis sells about them, and the right to dispute (and have corrected) inaccurate information in those reports.

## II.      JURISDICTION AND VENUE

2. The Court has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p, as well as 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) as LexisNexis regularly does business in this District and Division.

## III.      PARTIES

4. Plaintiff John Doeis a citizen and resident of Mecklenburg County, North Carolina and is not an infant, incompetent, nor in the military service of the United States. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

5. Defendant LexisNexis Risk Solutions, Inc. ("LNRS") is a business entity and consumer reporting agency that is a member and division of Defendant Reed Elsevier Technology Services, Inc., which provides background and employment screening services, risk-management services and products, information management products and services, and

2

decision-making intelligence. LNRS acquired Defendant Seisint Decision Services, Inc. in or around September of 2004, and controls and operates that company. LNRS regularly conducts business in this District and Division.

6. LNRS is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). LNRS is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

7. Defendant Reed Elsevier Technology Serives, Inc. ("Reed") is a business entity and/or a consumer reporting agency, of which LNRS is a division. Reed has three divisions, one of which is its Legal Risk and Management division, which is operated through and by Defendants LNRS and Seisint. Defendant Reed regularly conducts business in this District and Division.

8. Reed is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

9. Defendant Seisint Decision Services, Inc. ("Seisint") is a business entity and/or consumer reporting agency that provides information management products and services. Defendant Seisint sold Accurint reports exclusively until it was acquired by LNRS in 2004.

10. Upon information and belief, the Defendants have acted in concert with one another regarding the sale of Accurint reports since 2004. Defendant Seisint maintains and operates a principal place of business at P.O. Box 61004, Boca Raton, FL 33481.

11. Seisint is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). Seisint is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

12. LNRS, Reed, and Seisint operate collectively as a single business unit under the brand LexisNexis. They collectively operate as a "nationwide consumer reporting agency" as defined and governed by the FCRA.

13. The Court has personal jurisdiction over all parties. The Plaintiff resides within the geographic boundaries of this district and division. The Defendants have purposely availed themselves of doing business in North Carolina, including this district and division, and upon information and belief have a contract with North Carolina in order to obtain Automated Criminal/Infraction System (ACIS) information.

## IV.    FACTUAL ALLEGATIONS

### *Defendants' Practices As Consumer Reporting Agencies*

14. Before Reed Elsevier and LNRS purchased it, Seisint was a smaller business operating in Florida. It gathered public-records data on consumers and sold it under two brands: Accurint and Securint. There was no material difference between the two products; they were simply marketed to different audiences. While Accurint was marketed for a wide range of uses, Securint was sold exclusively for FCRA "employment" purposes.

15. After Reed and LNRS purchased Seisint in 2004, and then after litigation and regulatory enforcement unrelated to the present case, LexisNexis restructured its operations to place ownership of Accurint within Seisint, and ownership of Securint (now named "express Screen") in LNRS.

16. Upon information and belief, the sole purpose for such restructuring was to attempt to separate, on paper, the production and sale of Accurint reports from Securint reports. LexisNexis acknowledged that its Securint reports were governed by the FCRA, while attempting to prevent governance of its Accurint products by the same statute.

4

17. On or about September 5, 2014, LexisNexis entered into a class action settlement wherein it agreed to treat some, *but not all*, of its Accurint reports as consumer reports subject to the FCRA.

18. Plaintiff alleges on information and belief that despite the technical restructuring and class action settlement, all Accurint and Securint reports are built on and contain public record information obtained from judgments, liens, bankruptcies, criminal records, licensing histories, and other personal information that was collected, gathered and compiled by LexisNexis for the purpose of communicating the information to third parties for monetary compensation.

19. LexisNexis gathers public-record information about consumers and maintains it in a common database from which all of its Accurint and Securint reports are generated.

20. From this database, LexisNexis sells nationally, *inter alia*, Accurint-branded reports to government agencies (including the North Carolina Board of General Contractors) to assist with the determination of consumers' eligibility for government licenses or other benefits (including general contractor's licenses) granted by governmental instrumentality required by law to consider an applicant's financial responsibility or status.

21. Upon information and belief, Defendants also sell Accurint-branded reports to employers, landlords, insurers, creditors, and debt collectors that are used or expected to be used for permissible purposes under 15 U.S.C. § 1681b.

22. The Accurint database contains vast amounts of information about an individual consumer that Defendants have assembled and compiled, including but not limited to, information about the consumer's criminal history from public and court records.

23. Defendants allow their customers, including governmental instrumentalities like the North

5

Carolina Board of General Contractors, to search the Accurint database for, *inter alia*, criminal records by inputting a name or other individually identifying information.

24. As represented by Defendants, Accurint reports are used by more than 3,000 agencies across the country to, *inter alia,* help look for evidence of financial distress or prior criminal activities.

25. Some of the data the Defendants sell through Accurint reports derives from data that Defendants have purchased from other consumer reporting agencies and/or third-party vendors which it resells through an Accurint report.

26. By regularly selling such reports for a fee with the anticipated or expected use of such reports by users, including employers and government agencies, for purposes governed by the FCRA, Defendants operate as "consumer reporting agencies" ("CRAs") "that compile and maintain files on consumers on a nationwide basis," and national specialty consumer reporting agencies ("NSCRAs") as defined by 15 U.S.C. §§ 1681a(f), a(p) and a(w), respectively.

27. Despite the fact that Defendants assemble and compile consumer information for sale in the form of Accurint reports to government agencies, debt collectors, employers, and credit insurers on a nationwide basis, Defendants do not provide consumers with a disclosure of all of the information in their files that pertain to them or the sources of the information they report, do not provide consumers with summaries of their rights under the FCRA, do not maintain any toll-free telephone numbers available to consumers for these purposes, do not investigate any consumer disputes, and do not observe any reasonable standard of accuracy regarding the information contained within the Accurint reports.

28. Further, LexisNexis sells Accurint reports to users that have expressly disclaimed having any permissible purpose to obtain a consumer report under the FCRA.

29. LexisNexis knows that many if not most of its customers will use the reports for a purpose governed (though not necessarily permitted) by the FCRA.

30. As a matter of policy, LexisNexis deprives consumers of access to the information it sells about them. While LexisNexis will provide certain information to consumers upon written request, LexisNexis will not provide consumers with all of the information that the FCRA requires, including but not limited to, the identities of persons or entities who used or procured Accurint data from LexisNexis and the end-users of those reports (often referred to as consumer report "inquiries").

31. LexisNexis' failure to provide inquiry-related data is neither accidental nor an oversight. LexisNexis records and maintains inquiry-related data, including but not limited to the name of the requesting person or entity, the date and time of the request and the type of report sold, but simply refuses to provide this information to requesting consumers.

32. Moreover, in response to a consumer's request for a copy of his or her Accurint file, LexisNexis sends the consumer a form letter which states, among other things, that LexisNexis does not examine or verify its data, and that it is not possible for it to correct or change data that is incorrect or inaccurate. These statements are wholly and deliberately false as LexisNexis knows that it has the capacity to delete information contained within an Accurint report, and sometimes does.

33. LexisNexis also never provides consumers with a statement of their rights under the FCRA, including the right to dispute inaccurate information. Between concealing the consumer's rights, and affirmatively misrepresenting that it cannot and will not process any disputes or correct any inaccuracies, LexisNexis prophylactically denies consumers their FCRA-mandated right to dispute inaccuracies in their LexisNexis Accurint files.

34. LexisNexis willfully violates the FCRA by misrepresenting to consumers that it does not sell consumer reports and, therefore, is not governed by the FCRA as consumer reporting agencies or in any other respect.

35. LexisNexis's practices not only violate the FCRA as a matter of law, but also exact serious consequences on consumers and interstate commerce.

36. LexisNexis has been sued regarding its sale of Accurint reports and failure to follow the FCRA's strictures in doing so. *See e.g., Berry et al. v. Lexisnexis Risk & Information Analytics Group, Inc. et al.*, No. 3:11-cv-00754-MHL, United States District Court for the Eastern District of Virginia; *Adams, et al. v. LexisNexis Risk & Information Analytics Group, Inc., et al.*, No. 1:08-cv-04708-RMB-KMW, United States District Court for the District of New Jersey.

37. In the years that have transpired since the settlements in the aforementioned cases, LexisNexis has engaged in conduct that it knows is covered by the FCRA but has manufactured a fiction that its Accurint products are exempt.

38. Defendants have willfully or recklessly refused to modify their procedures to comply with the FCRA subsequent to the aforementioned cases.

39. Instead of ensuring that its products and procedures were compliant with the FCRA, Defendants use deceptive product labels in a conscious attempt to avoid the requirements of the FCRA.

40. Defendants have adopted an interpretation of the FCRA that is not only unreasonable, but is intended to deprive consumers of the protection of the FCRA to make more money for itself at the expense of the consumers about whom it sells information covered by the FCRA.

41. The FCRA was enacted by Congress to address the very type of consumer-harming conduct

8

in which the Defendants are engaging by collecting, compiling and selling consumer information to third parties for profit, by applying a deceptive label to the product, purposely refusing to maintain procedures for ensuring the maximum possible accuracy of such information, refusing to provide consumers with a copy of their files containing such information upon request, refusing to conduct a reasonable investigation into the accuracy of disputed information.

42. As a direct result of the Defendants' conduct, Plaintiff has been injured and continues to be harmed as long as Defendants refuse to provide him with information he is entitled to receive and to conduct an investigation into the disputed information and to correct it.

43. As a direct result of Defendants' conduct, Plaintiff's consumer rights have been violated by selling consumer information about him that it knew or should have known was governed by the FCRA.

### The Experience of Plaintiff John Doe

44. Plaintiff as the representative of a Class of all individuals subject to an Accurint report sold by LexisNexis to a user of the consumer report, within five years prior to the commencement of this action.

45. In or about August 2021, the North Carolina Licensing Board for General Contractors ("Licensing Board") procured an Accurint report pertaining to Plaintiff for the purpose of determining eligibility for a General Contractor's license.

46. The Licensing Board is a governmental instrumentality required by law to consider an applicant's financial responsibility or status when granting licenses.

47. The Licensing Board assesses an applicant's suitability for a license by using consumer reports.

9

48. Upon information and belief, the Licensing Board contracts with LexisNexis for access to Accurint products specifically marketed to government agencies and instrumentalities called Accurint for Government.

49. According to LexisNexis, Accurint for Government offers fast, efficient search technology that allows governmental users to verify names, addresses, Social Security Numbers, professional licenses, legal standing, criminal records, and other information, all of which pertains to consumers' character, general reputation, personal characteristics, or mode of living.

50. Although they often contain public-record information that overlaps among reports, LexisNexis sells Accurint reports under various product names, including but not limited to: "Bankruptcy Search Report," "Foreclosure Search Report," "Liens/Judgments Search Report," "Property Deeds Search Report," "Summary Report," "Comprehensive Report," and "Criminal Report."

51. LexisNexis claims that the FCRA does not apply to Accurint products, even though the reports contain criminal and public-record information that bears on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and that are communicated to third parties for the purposes enumerated in the FCRA

52. In this case, among other things, the information about the Plaintiff was gathered for the purpose of compiling and selling that information in consumer reports.

53. Among other things, the information about the Plaintiff was compiled into a report and sold to a governmental entity for the purpose of licensure.

54. In prior litigation, certain LexisNexis Accurint product(s) were the subject of an agreement

that such product(s) did not meet the definition of a consumer report while others were agreed to be consumer reports.

55. For instance, LexisNexis claimed that the Accurint for Collections (AFC) product that was at issue in *Berry v. LexisNexis* wasn't a consumer report. In that settlement, the AFC product was broken into two products – one "Collections Decisioning Suite" governed by the FCRA and one "Contact & Locate" that wasn't.

56. Whether a LexisNexis product is a consumer report depends on whether the product meets the definition of a consumer report as set forth in the FCRA, not on the label or disclaimer that LexisNexis gives its products.

57. Information included in the Accurint report was obtained by Defendants, at least in part, for inclusion in consumer reports.

58. LexisNexis knew or should have known that the Licensing Board was likely to use the Accurint report in connection with the determination of eligibility for a government license or privilege.

59. By way of example, a "Criminal Report" – which LexisNexis sold to the North Carolina Board of General Contractors regarding Plaintiff – contains one or more of the following output fields and types of information: Personal identity information including residences; Social Security Number; Race; Sex; Age; and records of criminal arrests and dispositions.

60. In or about September 2022, the Licensing Board determined that the general contractor's license should not be granted based upon the criminal public records in Plaintiff's Accurint report.

61. At the time that Defendants supplied a report about the Plaintiff containing erroneous criminal public records likely to have an adverse impact on the Plaintiff, it did not provide the Plaintiff

with any notice that it had sold such a report.

62. Plaintiff was not provided with a copy of the consumer report published to the Licensing Board prior to the adverse action.

63. Plaintiff was not provided with notice of his rights under the FCRA prior to the adverse action.

64. On March 28, 2022, Plaintiff submitted a written file request and dispute (enclosing copies of his Accurint report and Expungement Order) to Defendants, which requested an investigation into, *inter alia,* (a) all arrest data or adverse criminal record information that did not result in a conviction contained in the attached Accurint report that is more than seven years old; specifically including those with an arrest date of 4/16/2012 and (b) all data (specifically including, but not limited to, arrest records) contained in the attached Accurint report that were expunged, including all information related to the following expunged matters: 12CR215962, 12CR215963, 12CR215964, 12CR215965, 12CR215966, 12CR215967, 12CR215968, 12CR215969, 12CR215970, 12CRS221196, 12CRS221197, 12CRS221198.

65. Defendants received the file request and dispute on March 30, 2022; however, Defendants did not conduct an investigation or provide a consumer disclosure to Plaintiff in response.

66. On April 20, 2022, Plaintiff spoke with Defendants' representative and requested a file disclosure to determine whether the disputed criminal records had been removed from his Accurint file; however, no consumer disclosure was provided to Plaintiff in connection with this request.

67. As a result of Defendants' failure to provide Plaintiff with a file disclosure upon his written and oral requests, Plaintiff was deprived of information to which he has a statutory right, was unable to monitor whether his Accurint file contained inaccurate or obsolete information, was unable to determine the identities of persons to whom LexisNexis published Accurint reports

12

concerning Plaintiff, and Plaintiff has suffered economic, mental and emotional injury, including anxiety, frustration, financial insecurity, and embarrassment.

68. As a result of Defendants' failure to conduct a reasonable reinvestigation in response to his dispute, Plaintiff was denied the ability to have inaccurate and obsolete information corrected or removed from his credit file and has suffered mental and emotional injury, including anxiety, frustration, financial insecurity, and embarrassment.

69. Defendants' conduct was willful because it was intentional or reckless disregard of the Plaintiff's consumer rights.

70. The injuries suffered by the Plaintiff are the very type of injuries that the FCRA was enacted to prevent and remedy.

71. The Defendants' conduct is the type of conduct that the FCRA was enacted to prevent or punish.

72. The FCRA provisions that LexisNexis violated are akin to actions at common law such as intrusion upon seclusion, invasion of privacy, and defamation.

73. The Defendants' conduct was willful for a number of reasons, including that they have been on notice for at least a decade that their Accurint products are consumer reports, that they engaged in conduct designed to mislabel products in order to avoid the costs and inconvenience of compliance with the FCRA.

74. In deciding to mislabel products as not governed by the FCRA, Defendants interpreted their obligations under the FCRA unreasonably, at a minimum, and more likely, purposely to evade the legal obligations they owe to consumers.

## CLASS ACTION ALEGATIONS

### *The "File Request" Class*

75. Plaintiff brings this action on behalf of the following Class, of which he is a member:

> All persons residing in the United States of America (including its territories and Puerto Rico) who, during the period beginning five years prior to the commencement of this action through the date when the Court enters its Preliminary Approval Order, requested a copy of information about themselves from the Defendants or any of their predecessors or affiliates.

> Excluded from this class are counsel of record (and their respective law firms) for any of the Parties; and the presiding judge in the action and his/her staff, and all members of their immediate family.

76. **Numerosity.** Fed. R. Civ. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the members of the Class and Sub-classes are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by LexisNexis, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

77. **Commonality and Predominance.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis provided all of the information in the consumer's file upon request; how LexisNexis interpreted the FCRA; whether LexisNexis's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

78. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class Member. He is entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures of LexisNexis were uniform and systemic. The reports obtained and used regarding Plaintiff and the circumstances for which such reports

were furnished was uniform and typical of the facts for each member of the Class.

79. **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced with the Fair Credit Reporting Act and consumer class actions, and he intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his Counsel.

80. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Fed. R. Civ. P. 23(b)(2).

81. **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The injuries and resulting damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which LexisNexis has refused disclosure of Accurint information and inquiries to consumers, very few Class Member will ever know that they have been subject to an Accurint report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to

all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

### *The "Dispute" Class*

82. Plaintiff brings this action on behalf of the following Class, of which he is a member:

> All persons residing in the United States of America (including its territories and Puerto Rico) who, during the period beginning five years prior to the commencement of this action through the date when the Court enters its Preliminary Approval Order, initiated or submitted a dispute or other inquiry regarding an Accurint Report to any of the Defendants or any of their predecessors or affiliates.

> Excluded from this class are counsel of record (and their respective law firms) for any of the Parties; and the presiding judge in the action and his/her staff, and all members of their immediate family.

83. **Numerosity.** Fed. R. Civ. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the members of the Class and Sub-classes are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by LexisNexis, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

84. **Commonality and Predominance.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis promptly conducted an investigation into the consumer's bona fide dispute; whether LexisNexis conducted a reasonable investigation into the consumer's bona fide dispute; how

LexisNexis interpreted the FCRA; whether LexisNexis's violations of the FCRA were willful; and what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

85. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class Member. He is entitled to relief under the same causes of action as the other members of the Class. Without limitation, the procedures of LexisNexis were uniform and systemic. The reports obtained and used regarding Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

86. **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced with the Fair Credit Reporting Act and consumer class actions, and he intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his Counsel.

87. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Fed. R. Civ. P. 23(b)(2).

88. **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct.

It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which LexisNexis has refused to disclose and/or investigate Accurint information, very few Class Member will ever know that they have been subject to an Accurint report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

### *The "Unlawful Dissemination" Class*

89. Pursuant to N.C.G.S. § 15A-152(a), "[a] private entity that holds itself out as being in the business of compiling and disseminating criminal history record information for compensation shall destroy and shall not disseminate any information in the possession of the entity with respect to which the entity has received a notice to delete the record in question."

90. LexisNexis is a private entity that holds itself out as being in the in the business of compiling and disseminating criminal history record information for compensation.

91. Upon information and belief, LexisNexis received notice to delete the expunged records of Plaintiff and others similarly situated prior to the publication of Accurint reports to third-parties within five years of the commencement of this action.

92. Pursuant to N.C.G.S. § 15-152(b), "Unless the entity is regulated by the federal Fair Credit Reporting Act 15 U.S.C. § 1681, et seq. or the Gramm-Leach-Bliley Act 15 U.S.C. §§ 6801-

6809, a private entity described by subsection (a) of this section that is licensed to access a State agency's criminal history record database may disseminate that information only if, within the 90-day period preceding the date of dissemination, the entity originally obtained the information or received the information as an updated record information to its database. The private entity must notify the State agency from which it receives the information of any other entity to which it subsequently provides a bulk extract of the information."

93. Upon information and belief, LexisNexis has been licensed by one or more agencies of the State of North Carolina (including the Administrative Office of the Courts) to access their criminal history record database at all times relevant hereto.

94. Upon information and belief, LexisNexis disseminated information about Plaintiff and others similarly situated that was obtained through its license(es) with agencies of the State of North Carolina that was received more than 90 days prior to the date of dissemination.

95. For example, in May of 2016, the Honorable Judge Karen Eady Williams entered an Order expunging Plaintiff's criminal record for each of these civil action numbers: 12CR215962, 12CR215963, 12CR215964, 12CR215965, 12CR215966, 12CR215967, 12CR215968, 12CR215969, 12CR215970, 12CRS221196, 12CRS221197, 12CRS221198 ("Expungement Order(s)").

96. On or about July 15, 2016, the Clerk of Court for Mecklenburg County, North Carolina remitted a certified copy of the Expungement Orders to the NC Administrative Office of the Courts who, in turn, requested LexisNexis to delete the records and not to disseminate any information about the records pursuant to N.C. Gen. Stat. § 15A-150(d). Nevertheless, as identified herein, LexisNexis improperly maintained and disseminated these records.

97. Pursuant to N.C.G.S. § 15A-152(c), "A private entity subject to the provisions of this section

19

that disseminates information in violation of this section is liable for any damages that are sustained as a result of the violation by the person who is the subject of that information. A person who prevails in an action brought under this section is also entitled to recover court costs and reasonable attorneys' fees."

98. If Accurint reports are not subject to regulation under the FCRA[1] or the Gramm-Leach-Bliley Act,[2] then LexisNexis is liable to Plaintiff and others similarly situated for disseminating expunged records in violation of N.C.G.S. § 15A-152(c).

99. As a direct and proximate result, Plaintiff and members of the "Expunged Records"" class have suffered pecuniary and non-pecuniary harms, including lost income, reputational harm, embarrassment, frustration, and other forms of emotional distress that naturally arose therefrom.

100. Defendants violated the N.C.G.S. § 15A-152(c) as to Plaintiff and each "Expunged Record" class member by their inclusion of expunged records in Accurint reports published to third parties within the applicable statute of limitations.

101. Plaintiff brings this action on behalf of the following Class, of which he is a member:

> All persons residing in the State of North Carolina who, from the period beginning three years prior to the commencement of this action through the date when the Court enters its Preliminary Approval Order, were the subject of an Accurint report which included adverse criminal record information prohibited from dissemination under N.C.G.S. § 15A-152(b). Excluded from this class are counsel of record (and their respective law firms) for any of the Parties; and the presiding judge in the action and his/her staff, and all members of their immediate family.

102. **Numerosity.** Fed. R. Civ. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the

---

[1] The Plaintiff contends that Defendants are subject to the federal Fair Credit Reporting, Act 15 U.S.C. § 1681, *et seq*.
[2] Defendants are not subject to the Gramm-Leach-Bliley Act which governs financial institutions that offer consumers financial products or services.

members of the Expunged Record Class are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by LexisNexis, and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

103. **Commonality and Predominance.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. They include, without limitation: whether the Accurint products furnished are consumer reports as defined by the FCRA; whether LexisNexis obtains criminal record information through a license with an agency of the State of North Carolina, whether LexisNexis disseminated information obtained pursuant to a license with an agency of the State of North Carolina more than 90 days after it was obtained; whether LexisNexis ceased disseminating information obtained pursuant to a license with an agency of the State of North Carolina upon receipt of notice to delete.

104. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Expunged Record Class Member. He is entitled to relief under the same causes of action as the other members of the Expunged Record Class. Without limitation, the procedures of LexisNexis were uniform and systemic. The reports obtained and used regarding Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Expunged Record Class.

105. **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Expunged Record Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced with the Fair Credit Reporting Act and consumer class actions, and he intends to

prosecute this action vigorously. The interests of members of the Expunged Record Class will be fairly and adequately protected by Plaintiff and his Counsel.

106. **Injunctive Relief Appropriate for the Class.** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Expunged Record Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Fed. R. Civ. P. 23(b)(2).

107. **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by LexisNexis's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which LexisNexis has refused disclosure of Accurint information and inquiries to consumers, very few Class Member will ever know that they have been subject to an Accurint report. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by LexisNexis's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

V.     **CAUSES OF ACTION**

22

## Count I: 15 U.S.C. §§ 1681g, 1681h, and 1681j

108. Plaintiff incorporates the allegations in this complaint as the factual bases for his claim that the Defendants failed to provide Plaintiff and the putative class with the information required by the FCRA.

109. Defendants violated the FCRA, 15 U.S.C. § 1681g(a)(1) as to Plaintiff and each "File Request" class member by their failure to provide Plaintiff and Class Members "all information in their file" including all Accurint data when a file request was received by LexisNexis.

110. Defendants violated the FCRA, 15 U.S.C. § 1681g(a)(2) as to Plaintiff and each "File Request" Class Member by their refusal to provide Plaintiff and Class Members the sources of the Accurint information in their files when a file request was received by LexisNexis.

111. Defendants violated the FCRA, 15 U.S.C. § 1681g(a)(3) as to the Plaintiff and each "File Request" Class Member by their refusal to provide Plaintiff and the Class Members the identity of each person or entity who procured their Accurint report in the year preceding the date on which a file request was received by LexisNexis.

112. Defendants violated the FCRA, 15 U.S.C. § 1681g(c) as to the Plaintiff and each "File Request" Class Member by their refusal to provide Plaintiff and Class Members the Summary of Rights required by this section and as established by the Federal Trade Commission when a file request was received by LexisNexis.

113. Defendants violated the FCRA, 15 U.S.C. § 1681j(a) as to Plaintiff and each "File Request" Class Member by their refusal to provide Plaintiff and Class Members a full copy of their Accurint file once annually and without charging Plaintiff and the Class Members for copies of their Accurint reports.

114. The Defendants purposely devised a scheme by which to avoid the costs and inconvenience

of providing consumers with the statutorily required information that Defendants gathered, compiled and sold for monetary gain.

115.    The Conduct, acts and omissions of the Defendants were willful, rendering them liable for statutory damages in the amount of between $100 and $1,000 per Class Member and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the conduct, action, and inaction of Defendants was negligent, rendering them liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

116.    Plaintiff and other members of the putative class are entitled to recover costs and attorneys' fees as well as appropriate other relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681o and 1681n.

### Count II: 15 U.S.C. § 1681i

117.    Plaintiff incorporates the allegations in this complaint as the factual bases for his claim that the Defendants failed to provide Plaintiff and the putative class with a prompt investigation, correction or deletion of the disputed information required by the FCRA the foregoing paragraphs as through set forth fully herein.

118.    Defendants violated the FCRA, 15 U.S.C. § 1681i as to Plaintiff and each "Dispute" Class Member by their failure to accept consumer disputes of information in their Accurint file or report or to commence a reinvestigation of such dispute.

119.    The Defendants purposely devised a scheme by which to avoid the costs and inconvenience of providing consumers with the statutorily required investigation of disputed information that Defendants gathered, compiled and sold for monetary gain. This conduct willfully violated the FCRA.

120.    The conduct, acts and omissions of the Defendants were willful, rendering them liable for

statutory damages between $100 and $1,000 per Class Member and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

121. Plaintiff and other members of the putative class are entitled to recover costs and attorney's fees as well as appropriate other relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### *Count III: N.C.G.S. § 15A-152 (In addition to or in the alternative to Counts I-II)*

122. Plaintiff incorporates the allegations in this complaint as the factual bases for his claim that Defendants illegally disseminated criminal public record information about the Plaintiff and the putative class in violation of North Carolina. .

123. Defendants violated N.C.G.S. § 15A-152(c) with respect to Plaintiff and the "Unlawful Dissemination Class" by disseminating criminal record information obtained through an agreement with an agency of the State of North Carolina more than 90 days after it was obtained or after receipt of notice to delete.

124. Pursuant to N.C.G.S. § 15A-152(c), Defendants are liable to Plaintiff and members of the Expunged Records Class for damages sustained as a result of Defendants' unlawful dissemination as well as their court costs and reasonable attorney's fees.

125. As a direct and proximate result, Plaintiff and members of the "Unlawful Dissemination" class have suffered pecuniary and non-pecuniary harms, including lost income, reputational harm, embarrassment, frustration, and other forms of emotional distress that naturally arose therefrom.

**WHEREFORE**, Plaintiff prays the Court for judgment as set forth below:

    A. An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent the classes as class counsel;

    B. The creation of a common fund available to provide notice of and remedy

Defendants' unlawful conduct;

C. That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against Defendants for violations of the FCRA pursuant to 15 U.S.C. §§ 1681n and 1681o;

D. Statutory and punitive damages for Counts I-II;

E. Actual damages for Counts I-III;

F. Attorneys' fees, expenses and costs as provided by law;

G. Pre-judgment and post-judgment interest as provided by law.

H. In the alternative, the Plaintiff and the Class are entitled to issue certification and separate determinations of individual damages for negligent conduct.

I. For such other and further relief as the Court deems just and proper; and

J. For a trial by Jury.

MAGINNIS HOWARD
*Attorneys for Plaintiff*

*/s/ Karl S. Gwaltney*
KARL S. GWALTNEY
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:   919-526-0450
Fax:   919-882-8763
kgwaltney@maginnishoward.com
*LCvR Rule 83.1 Local Counsel*

*/s/ Susan M. Rotkis*
Susan M. Rotkis, Virginia State Bar 40693
Arizona State Bar 032866
Consumer Attorneys
2290 East Speedway Boulevard
Tucson, AZ 85719
srotkis@consumerattorneys.com
T:602-807-1504

*Attorney for Plaintiff, Pro Hac Vice Admission Forthcoming*

26